Adkins v. Toledo.


# ASSESSMENTS—CONSTITUTIONAL LAW—OFFICERS.

[Lucas (6th) Circuit Court, March 4, 1905.]

Hull, Haynes and Parker, JJ.

RICHARD ADKINS ET AL. v. TOLEDO (CITY) ET AL.

1. PRELIMINARY COST OF WORK PERTAINING TO MUNICIPAL IMPROVEMENT, PAID FROM GENERAL FUND, MAY BE INCLUDED IN ASSESSMENT, ETC.

The cost of the necessary preliminary work or action pertaining to a street improvement, such as the cost of advertising, serving notices, etc., paid by the municipality from its general fund, may be included in the assessment and collected from the owners of property specially benefited by the improvement, in order to reimburse the general fund, notwithstanding all such costs were proper charges which could enter into the aggregate charge to be assessed upon the properties benefited as part of the costs of the improvement, and no fund to pay such costs existed at the time the expenses were incurred.

2. ASSESSMENT TO PAY FOR IMPROVEMENT MADE UNDER STATUTE PARTLY UNCONSTITUTIONAL NOT ENJOINED, WHEN.

That part of original Sec. 2267 (repealed 96 O. L. 96; see Lan. R. L. 3612; B. 1536-221), which provided that no public improvement, except sidewalks and sewers, should be made by cities of the third grade of the first class until the majority of the owners of the property to be assessed therefor had petitioned the council for the improvement, etc., was legislation upon a subject of a general nature, and was unconstitutional, because it did not have uniform application throughout the state. Hence, where a street improvement was made in conformity with the requirements of the remaining constitutional provisions of the statute, by a municipality of the class and grade specially provided for in the unconstitutional part above referred to, an assessment to pay the costs thereof will not be enjoined merely because the procedure was not in accordance with the requirements of the unconstitutional part.

3. LEGISLATIVE BODIES MAY RECONSIDER VOTE TAKEN AS GENERAL RULE, ETC.

As a general rule, in the absence of any special rule upon the subject of the particular legislative body acting, a vote upon a reconsideration need not be taken either at the same or the next succeeding meeting, but may be taken at any time before rights have intervened in pursuance of the vote taken, or before the *status quo* has been changed.

4. COUNCIL MAY RECONSIDER ACTION IN VOTING DOWN RESOLUTION OF ANOTHER MUNICIPAL BOARD, WHEN.

The action of the board of councilmen of a municipality in voting down a resolution adopted by the board of aldermen, does not prevent it from reconsidering its action and passing the resolution at its next regular meeting held several days after the one at which the resolution was defeated, where it does not appear that, in the meantime, the board of aldermen had reconsidered and annulled their action in adopting the resolution, or that rights have vested in pursuance of the first action taken by the board of councilmen. And this rule applies, notwithstanding the legislative authority of the municipality is vested in the two boards, and the concurrence of both is necessary to the adoption of a resolution or the passage of a law.

APPEAL from Lucas common pleas court.

27  O.  C. · C. Vol. 27

Lucas County.

**W. H. A. Read,** for plaintiffs.

**U. G. Denman** and **Frank G. Crane,** for defendant in error:

The petition was not necessary. Sections 2264 and 2267 Rev. Stat. as in force in 1899; *Shoemaker* v. *Cincinnati,* 68 Ohio St. 603 [68 N. E. Rep. 1]; *Lewis* v. *Symmes,* 61 Ohio St. 471 [56 N. E. Rep. 194; 76 Am. St. Rep. 428]; *Douglass* v. *Pike Co.* 101 U. S. 677 [25 L. Ed. 968]; Sec. 26, Art. 2 Ohio Const.

As to the policy of the statute in the duty imposed upon municipalities to keep streets open and in repair. Original Secs. 2263, 2264, 2640 (repealed, 96 O. L. 96; see Lan. R. L. 3980, 3600, 3602, 3923; B. 1536-192, 1536-210, 1536-211, 1536-131); Lan. R. L. 3974 (R. S. 2680a; B. 1536-938).

The petition was sufficient. Original Sec. 2267 (repealed 96 O. L. 96; see Lan. R. L. 3612; B. 1536-221); *Grinnell* v. *Adams,* 34 Ohio St. 44; *Columbus (City)* v. *Slyh,* 44 Ohio St. 484 [8 N. E. Rep. 302]; *Cincinnati (City)* v. *Davis,* 58 Ohio St. 225 [50 N. E. Rep. 918].

The board of council could reconsider its action and pass the resolution at its next regular meeting after the resolution had been once defeated. 1 Dillon, Munic. Corp. (4 ed.) Sec. 290, p. 366; *Jersey City* v. *State,* 30 N. J. Law (1 Vroom) 521; *Bigelow* v. *Hillman,* 37 Me. 52; Smith, Munic. Corp. Secs. 306, 307 and 311; *Hough* v. *Bridgeport (City),* 57 Conn. 290 [18 Atl. Rep. 102]; *Red* v. *Augusta (City Council),* 25 Ga. 386; *People* v. *Rochester (City),* 5 Lans. (N. Y.) 11.

As to what cost and expense may be assessed. Laning R. L. 3654 (R. S. 2284); *McGlynn* v. *Todelo,* 12 Circ. Dec. 15 (22 R. 34).

**PARKER, J.**

This case comes into this court by appeal. It is an action brought by Richard Adkins and a large number of other persons, to enjoin assessments levied upon their property on account of the paving of East Broadway in this city. It is charged that the proceedings on the part of the city were so irregular and so lacking in the necessary support of fact and law as that the assessments are invalid. The principal grounds of attack are:

First. That in the course of this legislation a certain resolution— which is a necessary foundation proceeding—after having been passed by the board of aldermen, was defeated by a vote of the board of councilmen. That thereafter the board of councilmen undertook to, and did, reconsider their action and passed the resolution, but that the resolution was not thereafter acted upon by the board of aldermen; and it is

Adkins v. Toledo.

urged that by reason of the defeat of the resolution by the board of councilmen, if the subsequent vote to reconsider and the vote passing the resolution, had any effect, it was only in the way of an initiatory proceeding which would amount to the introduction and passing of a new resolution by the board of councilmen, which would therefore require a repassing by the board of aldermen in order to effect its full adoption.

Second. It is also urged that, in order to give support to this proceeding, it was necessary that a petition asking for the improvement should be signed by a majority of those interested—those owning the property along the line of the proposed improvement—and that while there might have been a majority signing the petition which was filed in this case at the time it was filed and at the time it was acted upon by the board of aldermen, there had been such changes of ownership of the property between that time and the time that the board of councilmen took action upon the matter that a majority was not represented upon the petition; but, on the other hand, that a remonstrance had been filed which a majority had signed. And it is urged that a petition signed by a majority of those interested, must be on file at the time final action is taken by the legislative body, or at least at the time that final action is taken upon the preliminary resolution.

As to that claim, the averment is denied by the city, and it is insisted that a large number of these transfers that occurred between the time of the filing of the petition and the action thereon by the board of aldermen and the subsequent action by the board of councilmen were made for the sole purpose of having a majority of those apparently interested, sign the remonstrance and oppose the improvement; that these transfers were not *bona fide,* and that effect should not be given to them; that the signing of those receiving such conveyances, for this purpose, should not be recognized.

We supposed that that question of fact had been threshed out upon the trial here, but it turns out since the trial that there has been some misapprehension about it and counsel may desire to be heard further upon it and perhaps introduce some evidence. The conclusion to which we have arrived makes that seem to us to be an entirely immaterial matter, here; but if the parties interested shall deem it material, they may have a further inquiry into the matter, in order that a proper finding of fact may be made up upon that question as well as upon other questions involved; but, deeming it immaterial we do not consider it necessary to await such action, and we proceed to a determination of the case.

Third. It is also urged—and this is a matter which does not af-

fect the whole assessment, but only a part of it—that a part of the costs of the preliminary action upon this improvement, viz.: the costs of advertising, the cost of serving the notices, the cost of abstracting and numbering, the cost of inspecting and the cost of the assessment, amounting in all to $384.81, all pertaining to this improvement, all required by law, all necessary action, were paid out of the general funds of the city, a fund for this improvement not having been raised by the sale of bonds or otherwise, at the time this preliminary action was taken and this expense incurred; and while counsel do not dispute that under Lan. R. L. 3654 (R. S. 2284; B. 1536-262), these are all proper charges to enter into the sum that is to be assessed upon the property specially benefited, yet they say that, it having been paid from the general fund, it cannot now be collected from the parties specially benefited; that it may not be levied as an assessment even for the purpose of reimbursing the general fund. I will dispose of that matter first. We find that it is true that these are all proper charges under Sec. 2284 which are to enter into the sum of the charges to be assessed upon the properties benefited as a part of the costs of the improvement.

It would seem that it might be very inconvenient, if not impossible, to raise these funds in the manner that funds are to be raised for special improvements in time so as to pay these bills as they accrue. Before the work is entered upon under the contract the funds to pay the cost of the improvement must be in the treasury. These funds are ordinarily raised by the sale of bonds for the particular improvement, and the funds are set apart for that; but before this action is taken, and before the authorities or the legislature of the city has come to the point where they may properly take this action, expenses like these are incurred.

To be sure the parties to whom payments are due for such services may be required to wait until the funds are raised and put into the treasury where they can be drawn upon, and we understand that it is conceded by counsel for the plaintiffs that if they should be required to do so they should then be paid from such fund; that such action would be regular and proper. But, because these matters were anticipated, because this money was practically borrowed from the general fund, they say that now the city is in a situation where it cannot reimburse the general fund. We are not cited to any authority which seems to us to be in point, or at least, to control. It seems to us that this claim lacks reason and equity for its support.

The burden is no greater for the persons who are required to pay these expenses for this improvement, if the payment is made in this

way than it would be if it were paid in what we conceive to be the regular way; and we know of no law that prevents a council from taking this action; or, if there is a law designed to prevent it we know of no principle which would justify the plaintiffs in insisting that they should be benefited by this irregularity—if it is an irregularity. We are cited by counsel for plaintiffs to the case of *Cin. L. & N. Ry.* v. *Cincinnati*, 62 Ohio St. 465 [57 N. E. Rep. 229; 49 L. R. A. 566], and especially to what is said by Judge Burket in the course of his opinion at pages 474-5, and I will read that. Preliminary to reading that, I will read what was decided by the court, and all that was decided by the court, viz.: what is contained in the syllabus.

"1.   Section 19, Art. 1 of the constitution is a limitation upon Sec. 6, Art. 13 as to the power of assessments.

"2.   Compensation paid to a landowner for lands taken by appropriation proceedings to open a street, cannot be assessed back upon the lands of the owner remaining after such taking. Neither can the costs and expenses incurred in such proceedings be so assessed. *Cleveland* v. *Wick*, 18 Ohio St. 303, overruled."

And in discussing provisions of the constitution which were drawn in question there, Judge Burket says as follows:

"Being such limitation all that is found in said Sec. 19 bearing upon the power of assessment must also be construed as a limitation upon that power; that is, the power of assessment in said Sec. 6 must be so used and administered as not to conflict with said Sec. 19, but must be subservient and subordinate thereto.

"The limitation is not only as to the amount of the assessment, which cannot exceed benefits, but it is also as to the purpose for which an assessment can be made. No assessment can be made to raise general revenue, because that must be raised by taxation under other provisions of the constitution, as has often been held by this court. And as assessments cannot be made to raise general revenue, no assessment can be made to replenish the general revenue in the treasury, or reimburse the treasury for general revenue which has been paid out. When payments have been made out of the general revenue fund, the treasury can only be replenished or reimbursed by taxation, or fees, and not by assessments."

Now a reading of the case discloses that what the court had under consideration and what the learned judge had in mind in using this language was, a case where general revenue had been used for a purpose for which general revenue only might be used, and not a case where general revenue had been used for a purpose on account of which special

assessments might be levied and funds raised. He had not under consideration a case where money had simply been borrowed from the general revenue to supply temporarily the place or purpose of a fund that might lawfully be raised by special assessment. He had under consideration a case where general revenue had been used to pay for a thing which should be paid for with and by the use of general revenue, and therefore, he says you cannot make a special assessment in the first instance to raise such revenue, neither may you accomplish the same thing through raising by special assessment revenue to reimburse the general fund, because it is a matter the expense of which must be paid from funds raised by general taxation.

And the case to which we are also cited in *Dayton* v. *Bauman,* 66 Ohio St. 379 [64 N. E. Rep. 433], is in harmony with this and goes no further.

We hold, notwithstanding the fact that these expenses were paid out of the general revenue fund and even though there may have been an irregular mode of procedure, that the parties to be benefited by these improvements are not thereby relieved from paying this part of the expenses and that they are not in a position to interfere with an effort of the city to reimburse the fund from which the money was temporarily borrowed.

We deem this question about the number of signatures to the petition and the remonstrance and these questions about the transfers of the property pending the proceedings as immaterial because, according to our view of the matter, no petition was required. The statute relied upon is original Sec. 2267 (repealed 96 O. L. 96; see Lan. R. L. 3612; B. 1536-221), which was in force at the time these proceedings were going forward, and the part of the section requiring the petition however large the affirmative vote of the council may be, is special to the city of Toledo. The first part of the section, the part which is in substance the form of the law before this part special to the city of Toledo was added, reads as follows:

Section 2267. "No public improvement the cost or part of cost of which is to be especially assessed on the owner of adjacent property, and no order appointing assessors of damages, or confirming their report, shall be made without the concurrence of the council, and it shall be essential that two-thirds of the whole number of members elected to the council concur, unless two-thirds of the owners to be charged, petition in writing therefor, and in villages not situated in a county containing a city of the first class, no special assessments shall be made except for sidewalks and gutters, and main or trunk-line sewers, and such other sewers, as are provided with a good and sufficient outlet unless it

Adkins v. Toledo.

first receive the assent in writing, of a majority of the owners to be charged therewith."

So that it will be seen that where two-thirds of the whole number of persons elected to the council concur under that general provision of the statute (and the statute, before the amendment was applicable to all the cities of the state) no petition was required; and it is shown and conceded here that two-thirds of each body of the common council did concur in this legislation. The provision applicable to the city of Toledo reads as follows:

"Provided that in cities of the third grade of the first class no public improvements (except sidewalks and sewers * * * ) the cost or part of the cost of which is to be assessed on the owners of adjacent property shall be made until the majority of the owners of the property to be assessed shall have petitioned to the common council asking for said improvement, and a statement of title showing the existing owners of said property shall have been filed with the city clerk, and until said petition shall have been approved by the city solicitor and his certificate endorsed thereon, the cost of procuring said statement to be taxed as part of the cost of improvement against the property assessed therefor."

Now that special provision made applicable to the city of Toledo alone, is legislation upon a subject of a general nature, and it does not have uniform application throughout the state, and, under recent decisions of the Supreme Court of Ohio, it is clearly unconstitutional. The common council need not have invoked it, and it does not appear that the common council did invoke it or act under it. We think the council might lawfully ignore it, and, so far as appears in this record, the council did ignore it. If the proceedings are sustainable under the law without the use of this provision, we believe we are bound to sustain them, and that we may not defeat the action of the council by invoking an unconstitutional provision.

This provision of the statute is not attacked on the ground that it confers corporate power. It is well said under that head, that instead of conferring corporate power it seems to limit or attempt to limit somewhat the corporate power already conferred by the general law, —by the law applicable to all municipalities. It qualifies and restricts such power so that perhaps it could not be successfully attacked upon the ground that it is a special law conferring corporate power. But it is a special law upon a subject of a general nature and it does not have general operation throughout the state, and we find that with that part of the statute eliminated, ample authority in the council to

proceed as it did proceed, by a two-thirds vote, to declare in favor of this resolution and proceed with all legislative action necessary in the premises. And it is evident that this provision special to Toledo is not of a character that it may be said that the legislature would not have passed the law with this provision absent. It is an excrescence that may be lopped off without harm to the remainder. We simply disregard the amendment and go back to the statute as it stood before the amendment added this provision.

The remaining question is, were the proceedings invalidated by the action of the councilmanic body in defeating this resolution in the first instance and afterwards reconsidering and passing it and proceeding with the work without requiring further action on the part of the aldermanic body?

The preliminary resolution was passed by the board of aldermen on May 22, 1899. It went over to the council and was voted down by the council on May 29, 1899. On June 12, 1899, the council voted to reconsider it, and upon the same day and at the same meeting it passed the resolution by the requisite vote. It appears that between May 29, when the resolution was defeated, and June 12, when it was reconsidered and passed, there was no meeting of the council; that this meeting on June 12 was the first meeting of the council succeeding the meeting of May 29.

Now with respect to the reconsideration of a vote taken by the council, the legislative bodies of the city have adopted a rule, which is rule No. 18, found in a book entitled, "Manual of the Common Council and the Municipal Government of the City of Toledo," under the title, "Rules and Regulations for the Government of the Boards of Aldermen and Councilmen of the City of Toledo, 1898-1899," which rule reads as follows:

"Rule XVIII. When a question has been taken it shall be in order for any member voting on the side which prevails to move a reconsideration thereof at the same or the succeeding meeting; or, if no regular meeting be held, then at the next meeting thereafter unless in the meantime the matter under consideration shall have become a law."

That rule, as we understand it, does not go beyond the ordinary rules and settled practice and law upon this subject, but rather restricts and qualifies them. It is generally true that a motion for reconsideration must be made by a person voting on the side prevailing, but, under the authorities, there seem to be some exceptions even to that rule. As a general rule, in the absence of any special rule upon the subject of the particular legislative body acting, a vote upon a reconsideration, as

we understand it, need not be at the same meeting, nor at the next succeeding meeting, but it may be taken at any time before rights have vested in pursuance of the vote taken, or before the *status quo* is changed, and it will be regular. And this rule provides that it does not apply if in the meantime the matter under consideration shall have become a law; which would be in consonance with the general rule that if some other body had acted whereby the matter had become a law, that it would not be competent for the body first acting to move a reconsideration to defeat such later action of another body. This rule seems to make it impossible for the same body which has made the matter a law to reconsider it. If, for instance, a law had originated with the aldermen and passed through that body and had gone over to the council and the council had voted to make it a law, under this rule the council could not reconsider that vote. But, however that may be, it is not a matter of very much interest here.

This resolution had not in the meantime become a law. The vote was taken at the next regular meeting which was held after the resolution was defeated. If, in the meantime the aldermanic body had taken up the resolution and defeated it, if they had reconsidered their action, if they had retreated after they had found out what had been done by the council, or perhaps even before the council had acted at all, it would present a different question; but the matter stood before the board of aldermen on June 12, precisely as it stood on May 29—it had been passed by that vote, and so far as they were concerned they had not taken any further action; they had done all they could do towards the adoption of the resolution and they stood upon their action—and matters being, therefore, in *statu quo* upon June 12, so far as action by that body was necessary and so far as the action of either body was concerned, and no rights of anybody having vested in the meantime in consequence of the action taken by the council on May 29, we cannot understand why the council might not at that time reconsider its action and pass the resolution. We believe it could and we hold that it could.

Rules upon this subject will be found laid down in Chap. 14 of Cushing's Manual of Parliamentary Practice. The rule as to the reconsideration of motions seems to have been one which originated in the United States and is peculiar to this country, or, at least it did not formerly obtain in England; and whether it does now, I am not prepared to say; but it has become very firmly established here. It is said, in Sec. 255:

"It has now come to be a common practice in all our deliberative assemblies, and may consequently be considered as a principle of the

common parliamentary law of this country, to reconsider a vote already passed, whether affirmatively or negatively.

"For this purpose, a motion is made and seconded in the usual manner that such a vote be reconsidered; and, if this motion prevails, the matter stands before the assembly in precisely the same state and condition, and the same questions are to be put in relation to it as if the vote reconsidered had never been passed. Thus, if an amendment by inserting words, is moved and rejected, the same amendment cannot be moved again; but, the assembly may reconsider the vote by which it was rejected, and then the question will recur on the amendment, precisely as if the former vote had never been passed.

"It is usual in legislative bodies, to regulate by a special rule the time, manner, and by whom, a motion to reconsider may be made; thus, for example, that it shall be made only on the same or a succeeding day,—by a member who voted with the majority,—or at a time when there are as many members present as there were when the vote was passed; but, where there is no special rule on the subject, a motion to reconsider must be considered in the same light as any other motion, and as subject to no other rules."

And I read from Smith, Munic. Corp. Sec. 307:

"It is the undoubted right of corporate bodies, unless clearly restrained by legislative enactment, to reconsider a vote as often as they see fit, or to rescind the same, provided vested rights are not disturbed, up to the time when by a conclusive vote, accepted as such by itself, a determination has been reached. They may adopt rules as to the time when reconsideration may be moved; and it is not necessary to the validity of a resolution to reconsider that it should be moved by one who voted originally with the majority; and a board of aldermen which has indefinitely postponed action on a resolution of the common council can afterwards rescind that action and pass the resolution."

There is more, in the succeeding section upon the same subject.

It is urged on behalf of plaintiffs that there is some difference where the legislative authority is vested in two tribunals, as here—a board of aldermen and a board of councilmen—and their concurrence is required for the adoption of a resolution or the passage of a law; but we cannot see that this is so; we cannot understand upon what principle it would be so, unless in the meantime—between the time that the action is taken and the reconsideration—the other body has taken some **action** in the premises or has done something with which such subsequent action is inconsistent.

Adkins v. Toledo.

The case of *Hough* v. *Bridgeport* (*City*), 57 Conn. 290 [18 Atl. Rep. 102], seems to be in point. I read from the syllabus:

"A resolution laying out the street having passed the lower house of the common council came to the board of aldermen. By law it was necessary to the validity of the lay-out that the aldermen should concur in passing it. They indefinitely postponed the resolution and at a later meeting rescinded that action and passed the resolution. Held to be a legal concurrence."

And we think that other authorities cited in the brief are in point. We find no authority laying down a different rule based upon the circumstance that there are two bodies to act that must concur upon the resolution or action in question. Hence we believe and hold that the action of the council in the premises was valid; that it was not necessary to ask for the reconcurrence of the aldermanic body in order to legally proceed upon the resolution; and so holding, and there being no other fault found with this proceeding, and no fatal fault therein that we can discover, we hold that the action of the city authorities in the premises was legal and valid and that the assessments must stand. The petition of the plaintiffs will be dismissed, at their costs.

**Hull** and **Haynes, JJ.**, concur.